Filed 10/30/20  Phillips v. Sugarman CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DALE E. PHILLIPS, | |
| Plaintiff and Appellant, | G058152 |
| v. | (Super. Ct. No. 30-2018-01018415) |
| STEVEN A. SUGARMAN et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed.

Dale E. Phillips, in pro. per., for Plaintiff and Appellant.

Michelman & Robinson and Reuben A. Ginsburg for Defendants and Respondents.

\*          \*          \*

This is an appeal following judgment after the trial court sustained demurrers without leave to amend and granted summary judgment in favor of Steven A. and Ainslie M. Sugarman (defendants or the Sugarmans)[1] and against Dale E. Phillips (Phillips or plaintiff). This case relates to a single interaction between Phillips, who formerly worked as a driver for Strack Chauffeured Transportation, Inc. (Strack) and the Sugarmans, who were passengers and clients of Strack. In short, he claims the Sugarmans lied about his actions during a trip, resulting in the termination of his employment. He filed a lawsuit, representing himself, against both Strack and the Sugarmans, although this appeal relates only to the Sugarmans.

In sum, Phillips argues that the Sugarmans' demurrers to his causes of action for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress, and the court's ruling granting summary judgment on their cause of action for defamation are subject to reversal. We conclude that Phillips inadequately pleaded his negligence-related claims and that amending his complaint would not cure the deficiencies. We further find that summary judgment on the defamation cause of action was appropriate as a matter of law and because of the lack of evidence demonstrating a triable issue of material fact. Accordingly, we affirm the judgment.

---

[1] Due to their common surname, when needed, the Sugarmans are referred to by their first name for the ease of the reader.

# I

## FACTS[2]

Phillips began working as a driver for Strack in 2014. In approximately June and November 2017, complaints were received from different customers regarding Phillips' performance. He had previously been counseled regarding his availability and visibility to clients.

On December 8, 2017, Phillips was assigned to drive Ainslie and her three children on an as-directed basis from 2:00 p.m. to 5:45 p.m. Ainslie had used Strack for transportation needs approximately 20 times that year, but had not previously been assigned Phillips as a driver.

Phillips picked up Ainslie and her children at a hotel in Newport Beach and drove them to South Coast Plaza. At approximately 3:25 p.m., Ainslie called Phillips requesting a pickup and to be driven to the Howard Hughes Promenade (the Promenade) in Los Angeles. He picked them up and began the drive to the Promenade. At approximately 4:30 p.m., just before arriving at the Promenade, Ainslie texted Phillips stating that she was sending him her husband's phone number, and that her husband would meet Phillips to take her bags and other personal items from the vehicle.

Phillips asked Ainslie, "will that happen within the next 30 minutes?" He later stated this was because he had another pickup that day at 6:30 p.m. and needed to let dispatch know his availability, but he does not claim he explained this to Ainslie. Ainslie did not answer the question. She instructed her children to collect their belongings; hearing this, Phillips took her bags from the vehicle. Phillips claimed he believed the job was finished without incident, and according to him, Ainslie complimented him.

---

[2] Phillips' opening brief includes no statement of facts. By his own admission, in order to avoid the word count limit on opening briefs, Phillips submitted 13 pages of appendices with a "chronology of events" and a "procedural history." These appendices are improper, and accordingly, we disregard them.

Shortly thereafter, Strack's dispatch ordered him to return to the Promenade to wait for Ainslie. At an administrative hearing regarding Phillips' unemployment claim, Phillips' superior, Kempe, testified that after Phillips left the Promenade, Matthew Strack "got a phone call directly from the client, saying 'what is going on?' And I happened to be in the office myself at the time . . . and we immediately called Mr. Phillips asked him to return [and] to remain on post." Thereafter, Strack received another call from Steven that he neither wanted Phillips or another driver to return to the Promenade.

According to Phillips, Steven had allegedly called Matthew Strack, the CEO of Strack, and complained to him that Phillips had "abandoned" them. Ainslie had allegedly made this statement to her husband. Phillips draws the "abandoned" language from a counseling record. Kempe, the supervisor, wrote the document, which stated: "Dale abandoned a client with baggage midway on an 'as directed' trip without being released by the client. He also did not notify dispatch of the anticipated length of the [as directed] trip." Similar language was used in an employee separation notice. Despite Phillips' allegation to the contrary, there is no evidence Ainslie or Matthew ever used this exact or even similar language, or if there is, Phillips does not provide it.

Upon returning to the Promenade, Phillips contacted Ainslie and stated he was waiting for her, but she declined any further service from him: "Thank you but we are in the movie now with our bags and I'll just bring them to my husband when he comes here later tonight. Sorry for the confusion." Strack subsequently discharged Phillips.

In September 2018, Phillips filed the instant complaint in this action. The Sugrarmans demurred, which was partially sustained by the trial court. Phillips then filed the instant complaint, naming the Sugarmans in causes of action for negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and defamation. The Sugarmans demurred to all causes of action. In March 2019, the court

4

sustained the demurrers to the three negligence-related claims without leave to amend, and overruled the demurrer as to the defamation cause of action.

Discovery proceeded, including motions to compel. Phillips did not take or seek to take the depositions of either of the Sugarmans or of Strack personnel, including Matthew Strack or Kempe.

In May 2019, the Sugarmans filed a motion for summary judgment on the remaining cause of action for defamation. Their argument was fairly simple: they had not said anything to anyone regarding Phillips' job performance; the defamation claim was based on nonactionable opinion; it was barred by the defense of truth; and Phillips' termination was not based on anything the Sugarmans allegedly said.

The facts supporting the motion were set forth in a brief separate statement of 10 paragraphs. The Sugarmans' supporting evidence included declarations by Ainslie, Steven, Matthew Strack, and Kempe. The Sugarmans' declarations stated they had never made any statement regarding Phillips' job performance to anyone associated with Strack, and in particular, both said they had not used the word "abandoned." Ainslie confirmed that Phillips dropped her off with her luggage before her husband arrived. Matthew Strack and Kempe confirmed the previous complaints against Phillips. Kempe, who was the individual who prepared the counseling record and separation notice that included the "abandoned" language, stated he had never spoken to either Ainslie or Steven at any time.

Phillips opposed the motion. His separate statement disputed Ainslie's statement that she had never made any statements about his job performance. He relied on two documents, both created by Strack: the job counseling record that stated he "abandoned" a client on a trip, and the Strack separation notice. He did not include any additional evidence regarding the Sugarmans' alleged use of the term "abandoned." Phillips did not include any additional material facts, nor did he offer a declaration of his own.

5

Phillips relied only on the two documents mentioned above and the audio recording from an administrative hearing in connection with his unemployment claim. He asserted Kempe's testimony at the administrative hearing contradicted his declaration, and accused him of lying and attempting to defraud the court, mischaracterizing both the evidence and the Sugarmans' arguments. For example, he claimed the Sugarmans argued: "No phone/text conversations occurred between Sugarman Defendants, Matthew Strack, Wayne Kempe or any other personnel employed by Strack after Plaintiff dropped off Defendant Ainslie M. Sugarman December 8, 2017." That, however, is not what the evidence averred. It stated that Ainslie did not communicate with anyone at Strack, and Kempe never communicated directly with the Sugarmans. Neither Matthew Strack nor Steven stated they did not communicate with each other. Matthew Strack stated he had not communicated with Steven "regarding" Phillips, and Steven said he had not communicated with anyone "regarding" Phillips' "job performance" or "used the word 'abandoned.'"[3]

Phillips also failed to address several legal arguments set forth by the Sugarmans, including whether any statements, assuming they had taken place, were nonactionable opinion, whether the statements were true, and whether Phillips' termination had resulted from any such statements.

Phillips had also filed a motion to compel, including a request for the Sugarmans' phone records, for December 8. It was set for hearing on the same date as the summary judgment motion.

---

[3] The only real inconsistency between the declarations submitted in opposition to summary judgment and Kempe's testimony at the administrative hearing relates to whether Ainslie herself called Strack's offices. Kempe testified it was his "understanding" that she had called, but he had not spoken to her himself, and later stated "[I]t may have been Mr. Sugarman himself directly or it may have been the wife." He had no firsthand knowledge of Ainslie's state of mind. This is, at best, a minor inconsistency that does not relate to the substance of any statements that may have been made. As Kempe testified, he was uncertain as to who had called Strack's offices.

After a hearing (the transcript of which is not included in the record on appeal), the trial court issued an order stating that the Sugarmans "have brought forth prima facie evidence that they are entitled to a judgment as a matter of law on plaintiff's defamation cause of action of the first amended complaint. The burden thus shifted to plaintiff to raise a triable issue of material fact. Plaintiff has failed in raising such an issue of triable fact as to the said cause of action. Summary judgment granted accordingly." The motion to compel was denied as moot. Judgment was subsequently entered.

This appeal followed.


II

DISCUSSION

We begin by noting that Phillips, who filed this appeal as a self-represented litigant, raises a number of issues with regard to Strack that are simply irrelevant here. This appeal is only with respect to the Sugarmans, and we address only the issues pertinent to the causes of action Phillips filed against them.


A. *Demurrers to Negligence and Emotional Distress Claims*

The court sustained demurrers without further leave to amend as to Phillips' claims against the Sugarmans for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. We also consider matters which may be judicially noticed. Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context, and ignoring erroneous or confusing labels if the complaint pleads facts which would entitle the plaintiff to relief." (*McBride v. Boughton* (2004) 123

7

Cal.App.4th 379, 384-385.)  "If a complaint does not state a cause of action, but there is a reasonable possibility that the defect can be cured by amendment, leave to amend must be granted."  (*Quelimane Co. v. Steward Title Guaranty Co.* (1998) 19 Cal.4th 26, 39.)  We give no effect, however, to contentions, deductions, or conclusions of either fact or law.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)

### *1. Negligence*

"The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages."  (*Peredia v. HR Mobile Services, Inc.* (2018) 25 Cal.App.5th 680, 687.)  The existence of a duty can be determined by the court as a matter of law.  (*Eriksson v. Nunnink* (2015) 233 Cal.App.4th 708, 719-720.)

Phillips claims that the Sugarmans are liable to him for negligence because they allegedly made an untruthful statement about him, and because they are "attorneys who did know, or should have known, the effects of such a statement."  He offers no analysis of the legal basis for the duty he claims the Sugarmans owed to him, simply stating every person has a general duty to prevent harm upon others.  This does not constitute an adequate legal analysis of this issue, and that alone is sufficient to conclude Phillips has not met his burden to demonstrate error.  (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.)

Moreover, Phillips has failed to allege a cognizable duty as a matter of law.  Duty is not an immutable fact of nature "'but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'"  (*Dillon v. Legg* (1968) 68 Cal.2d 728, 734.)  Other than his claim regarding foreseeability, he states only:  "PLAINTIFF claims that he was harmed by DEFENDANT S. SUGARMAN'S negligence.  PLAINTIFF will prove during trial, the following:  [¶] a. That DEFENDANTS S. SUGARMAN and A. SUGARMAN were negligent;  [¶]  b.

That PLAINTIFF was harmed; and [¶] c. That DEFENDANTS S. SUGARMAN and A. SUGARMAN's negligence was a substantial factor in causing PLAINTIFF's harm."

This is insufficient as a matter of law. A complaint must plead ultimate facts, not legal conclusions. That defendants were negligent is a legal conclusion, and claiming that every person has a general duty to prevent all harm to others is not a sufficient basis for pleading the existence of a duty. We find no basis in law for concluding that a customer has a general duty to an employee to prevent harm to their employment status.

Additionally, Phillips does not adequately plead the Sugarmans behaved negligently, which his own complaint defines as the "want of ordinary care." Indeed, he claims they *intentionally* made an untruthful statement about him throughout his complaint. It was not a slip of the tongue, according to him, nor did they misspeak. He asserts they deliberately and intentionally told Strack that Phillips "abandoned" them. In addition to the lack of a duty, he has failed to plead negligent behavior. In sum, Phillips has not demonstrated the court erred by sustaining the demurrer or failing to grant further leave to amend.

### 2. *Negligent infliction of emotional distress*

With certain exceptions that do not apply here, the tort of negligent infliction of emotional distress in California law is simply a species of negligence. The same elements of duty, breach, causation, and damages apply, and the existence of duty is a matter of law. (*Huggins v. Longs Drug Stores California, Inc.* (1993) 6 Cal.4th 124, 129.) Such a duty is either assumed by the defendant, arises out of a preexisting relationship with the plaintiff, or is imposed as a matter of law. (*Id.* at pp. 129-130.)

"[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the

9

emotional distress is proximately caused by that breach of duty. Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests." (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 985.) As discussed above, as a matter of law, Phillips failed to plead facts that would support recovery under a negligence theory. We find no error with respect to this cause of action.

### 3. *Intentional infliction of emotional distress*

A claim for intentional infliction of emotional distress must plead the following elements: "'""""(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'"""" [Citations.] A defendant's conduct is 'outrageous' when it is so ""'extreme as to exceed all bounds of that usually tolerated in a civilized community.'"""" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051.)

Phillips offers boilerplate language about the tort of intentional infliction of emotional distress, but does not perform any analysis as to why it applies to these facts. Even if we assumed the Sugarmans did complain about his service, and did so without basis, that would still not be the type of "extreme and outrageous" behavior necessary to plead intentional infliction of emotional distress. Both Phillips allegations and his statements on appeal are entirely conclusory, and he fails to demonstrate the trial court erred.

10

#### *4. Lack of prejudicial error*

Even if Phillips had managed to plead one or more causes of action, or even if he could have presented a reasonable argument to the trial court that he should have another chance to amend his complaint, any error was not prejudicial. All of his causes of action were based on the same underlying conduct: that the Sugarmans allegedly lied to Strack and told Strack he "abandoned" them. As we discuss *post*, any such cause of action would have been subject to summary judgment for the same reason his defamation claim failed: he simply presented no evidence this statement was ever made, and his claims would have been subject to the common interest privilege. Accordingly, sustaining the demurrers to these claims did not result in prejudicial error. (See, e.g., *Cohen v. Kabbalah Centre Internat., Inc.* (2019) 35 Cal.App.5th 13, 23.)

### *B. Summary Judgment on Defamation Claim*

#### *1. The separate statement's missing page*

Before we reach the substance of the motion, we first address Phillips' claim that he did not have 75 days to respond to the Sugarmans' motion for summary judgment because the Sugarmans' separate statement was missing a page when filed. But this is not a matter of timeliness; he does not dispute that he had the required number of days to respond, nor does he cite *any* authority that a single missing page equates to a motion not being filed at all. He does not dispute that he received all of the Sugarmans' other documents, including the points and authorities, supporting declarations, and evidence. The only questions are whether he adequately requested a remedy for the error from the trial court, and whether he was prejudiced.

The following are the facts that were included in the missing page:

"4. Steven A. Sugarman ("Steven Sugarman") never made any statement (oral or written) regarding Plaintiff's job performance to anyone associated with Strack.

11

(Strack Decl. at par. 4; Kempe Decl. at par. 4; and Declaration of Steven Sugarman at par. 1.)

"5. Steven Sugarman has never met or talked to Plaintiff. (Declaration of Steven Sugarman at par. 3.)

"6. Ainslie Sugarman never used the word "abandoned" with regards to her December 8, 2017 trip with Plaintiff. (Declaration of Ainslie Sugarman at par. 3.)

"7. Steven Sugarman never used the word "abandoned" with regards to Ainslie Sugarman's December 8, 2017 trip with Plaintiff. (Declaration of Steven Sugarman at par. 2.)

"8. Strack had several problems with Plaintiff's job performance during his employment with Strack. (Strack Decl. at par. 5; and Kempe Decl. at par. 5.)

"9. Around June 2017, a customer complained to Strack about Plaintiff's failure to pick her up outside of a doctor's office. (Strack Decl. at par. 6; and Kempe Decl. at par. 6.)"

As for the timeline, the Sugarmans' motion was filed on May 16, 2019, with the hearing noticed for August 2. The separate statement, as we noted, was filed missing a page. On June 26, over a month later, Phillips raised this for the first time in an e-mail to the Sugarmans' counsel, but did not specify the exact problem. The e-mail, from an individual who stated he was "managing Mr. Phillips court documents" stated: "Unfortunately, one of the documents critical to motion, 'the Separate Statement' arrived with very clear errors of omissions." Counsel for the Sugarmans did not understand the problem, apparently thinking Phillips or his document manager believed the second column of the separate statement should have included some content. "What is incomplete? The second column is supposed to be blank." No response is included in the record.

Weeks later, on July 16, the same date he filed his opposition, Phillips filed a "Request for Judicial Notice" that the separate statement was incomplete. Phillips'

12

responsive separate statement omitted the facts from the missing page. Finally, understanding the nature of the problem, the next day the Sugarmans' counsel filed a notice of errata and a declaration explaining the error, and filed and served the complete separate statement. The notice stated that if the court believed Phillips should be afforded more time, the court should set an August 8 deadline for him to file a new opposition to the separate statement, and any other documents he wished to file, and to continue the hearing on the motion for three weeks.

There is no indication that Phillips ever requested additional time, or asked for anything more than what he requested in his opposition, the court's "vigilance on this matter." Indeed, he instead claimed the missing page was an intentional tactic by the Sugarmans to hurt his case "and to blind the court to the deception." (Capitalization & boldfacing omitted.) Nor did he ever seek to amend his own responsive separate statement.

By failing to request any additional time from the trial court, or to raise this issue with the court at any time before his opposition was due, Phillips cannot now complain of it, much less claim it constitutes prejudicial error requiring reversal. Further, even if it was somehow error for the court not to grant Phillips more time that he never requested, it was not prejudicial.

Even if the Sugarmans had never amended their separate statement, the court still had discretion to consider the facts raised in the missing page. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315.) The overall purpose of the separate statement is to give the opposing party adequate notice of the "facts it must rebut in order to prevail." (*Id.* at p. 316.) This is obviously particularly important in a complex case involving multiple causes of action; this court has seen many separate statements running to dozens or even hundreds of pages. But that is not the situation here. This case involved a single cause of action, defamation, and the motion for summary judgment relied mostly on four brief declarations, all of which Phillips

13

received. Those declarations are the only evidence the Sugarmans relied on to support the facts stated on the missing page. Phillips spent much of his opposition to the motion for summary judgment contesting the facts in these declarations and explaining why, in his view, they were insufficient to support summary judgment. He clearly knew what facts he needed to rebut to defeat the motion, and therefore, the missing page did not result in any prejudice to Phillips. Accordingly, this does not warrant reversal, and we move on to whether the motion was properly granted on substantive grounds.

### 2. *Statutory framework and standard of review*

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)[4] To prevail on the motion, a defendant must demonstrate the plaintiff's cause of action has no merit. This requirement can be satisfied by showing either one or more elements of the cause of action cannot be established or that a complete defense exists. (§ 437c, subds. (o), (p); *Bardin v. Lockheed Aeronautical Systems Co.* (1999) 70 Cal.App.4th 494, 499-500.)

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Ibid*.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the

---

[4] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

14

underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850, fn. omitted.)

In performing our de novo review, we use the same procedure as the trial court. We first consider the pleadings to determine the elements of each cause of action. Then we review the motion to determine if it establishes facts, supported by admissible evidence, to justify judgment in favor of the moving party. Assuming this burden is met, we then look to the opposition and "decide whether the opposing party has demonstrated the existence of a triable, material fact issue." (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438.) We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.)

### *3. Moving party's burden*

As noted above, the party moving for summary judgment has the "initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at pp. 850-851.) In order to make this determination, we review the law and evidence relevant to the pleaded cause of action.

The only cause of action here is defamation. "The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.)

The most pertinent element here is the first, that either defendant published any arguably defamatory statement about Phillips. The statement Phillips claimed was defamatory is that he "abandoned" Ainslie and her children with their luggage. The Sugarmans claim they made no such statement, and in support of summary judgment, they submitted their declarations, Matthew Strack's declaration, and Kempe's

15

declaration. Each of these declarations state that the Sugarmans never said Phillips "abandoned" Ainslie, nor did the Sugarmans discuss Phillips' job performance with anyone at Strack. This is sufficient evidence to meet their burden on summary judgment.

### 4. Responding party's burden

The burden then shifted to Phillips to demonstrate a triable issue of material fact. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at pp. 850-851.) Substantively, Phillips relied primarily on the four declarations submitted in support of the motion for summary judgment, several statements that Kempe made at the administrative hearing regarding his unemployment claim, and a number of Strack documents. He did not add any new disputed facts to his separate statement, nor did he submit a declaration on his own behalf.

To defeat summary judgment, Phillips was required to demonstrate a triable issue of material fact on the elements of defamation. Before we reach the more complicated concepts, he must first demonstrate that a defamatory, or arguably defamatory, statement was made by the defendants. He failed to do so. The only evidence submitted on this point is that Ainslie never spoke to anyone at Strack and that Steven did not speak to anyone at Strack regarding Phillips' performance. This is not enough to support Phillips' contention that any defamatory statement was made, much less the nature of that statement.

Phillips suggested to the court below that the use of the word "abandoned," written on the counseling and separation forms by Kempe, is sufficient to create a trial of fact. "It is reasonable for Plaintiff to assume that Strack attempted to enter into the record accurate account of what occurred. Plaintiff contends that Strack would have asked Sugarman Defendants what Plaintiff was being accused of doing. The record shows that Plaintiff allegedly 'abandoned' Defendant Ainslie M. Sugarman and her children on a chauffeured trip." But this requires too many inferences: the inference that

16

anyone at Strack spoke to either of Sugarmans after the incident about what happened, a fact which Phillips never alleged, much less supported with evidence; the inference that either of them used the word "abandoned;" the inference that Kempe, who wrote both documents and did not speak to either of the Sugarmans, quoted their language without saying so, rather than characterizing the incident in his own words. There is simply no evidence to support such an inference.

Kempe's testimony from the administrative hearing stated the call they received only said "what happened," and then the Sugarmans declined the further services of a Strack driver that night. We decline to read into this, or any of the other evidence Phillips put forth, that either of the Sugarmans used the word "abandoned."

Phillips' entire defamation claim rests on this use of this word, and without any evidence at all that either defendant ever said it, he has not demonstrated the existence of a triable issue of fact sufficient to defeat summary judgment. The court correctly granted judgment in the Sugarmans' favor. Accordingly, we need not consider the Sugarmans' remaining arguments as to why summary judgment was proper.[5]

### 5. *The common interest privilege*

Even were we to find that either of the Sugarmans used the word "abandoned" to describe the December 2017 incident, or that there was a material fact as to whether they ever discussed Phillips' job performance with Matthew Strack or any of his employees, we would nonetheless find summary judgment appropriate because the

---

[5] Because Phillips failed to demonstrate a defamatory statement was ever published, his argument that the court erred by turning his defamation per se claim into one for defamation per quod is moot. Either claim requires a false statement of fact. Further, his failure to submit a reporter's transcript, which is apparently the only place this issue was discussed, renders it unreviewable in any event.

common interest privilege would render any such statement nonactionable as a matter of law.[6]

The common interest privilege, as set forth in Civil Code section 47, subdivision (c), states that a privileged communication is one made "without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."

Phillips claims that the common interest privilege does not ever apply between customers and businesses. He offers no authority for this assertion. The qualified privilege is recognized where the common interest is "something other than mere general or idle curiosity, such as where the parties to the communication share a contractual, business or similar relationship." (*Hawran v. Hixson*, *supra*, 209 Cal.App.4th at p. 287.) This may include communications about the conduct of an employee. (*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 949.) It is undisputed that any communication that did take place about Phillips would have concerned his conduct as an employee.

The policy behind applying such a privilege under these circumstances is obvious. Customers and businesses should be able to freely communicate about those affairs, including the performance and conduct of the business's employees, without the fear of defamation liability for nonmalicious conduct.

Phillips asserts that even if the privilege might apply, he sufficiently alleged malice in his complaint. He did not. Malice has a specific legal meaning in connection with defamation, and his assertion in the introduction of his complaint that the Sugarmans' complaint was "malicious" or "malicious and outrageous" is insufficient.

---

[6] This is an issue of law as applied to undiusputed facts. Therefore, "we may address it for the first time on appeal." (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 286-287.)

18

Phillips did not allege the existence of malice in his cause of action for defamation. He alleged only that the Sugarmans "failed to use reasonable care to determine the truth or falsity of the statement(s)."

Malice, in the defamation context, is "a reckless or wanton disregard for the truth." (*Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 740.) It cannot be presumed from the fact of the communication itself; a claim of malice must be supported by evidence. (*Barker v. Fox & Associates* (2015) 240 Cal.App.4th 333, 354.) Phillips has no such evidence, nor does his allegation suffice. Thus, the common interest privilege would preclude liability even if Phillips had some scintilla of evidence that either defendant had made an arguably defamatory statement to Strack about him.

## C. Discovery of Phone Records

Phillips also claims the court erred by failing to hear and decide on his motion to compel production of the Sugarmans' phone records for the date in question before the hearing on the motion for summary judgment. The record does not reflect this, however, nor does he argue, that he ever raised this with the trial court via an ex parte motion or other request to advance the date of the hearing or to delay the motion for summary judgment until the issue was resolved. It is, therefore, waived for failure to raise it below. (*Gonzalez v. County of Los Angeles* (2004) 122 Cal.App.4th 1124, 1131-1132.)

Even if we were to consider this argument, we conclude that if the motion had been granted, it would not have resulted in a different outcome in the summary judgment motion. Even if Phillips obtained the Sugarmans' phone records and even if those records showed a call between Steven and Matthew Strack or another Strack employee, it would not prove the contents of the conversation (nor would it prove, despite Phillips' claims to the contrary, that anyone was a liar). For all we know, any conversation could have reflected a misunderstanding (as Ainslie's later text to Phillips

19

suggests), but that nonetheless, Steven had decided to pick up his wife and children himself.  Given the phone records could not provide the *content* of any communications – which is obviously key to a defamation claim – we find no error here.  Moreover, the common interest privilege would nonetheless defeat Phillips' claim in any event.

## III

## DISPOSITION

The judgment is affirmed.  The Sugarmans are entitled to their costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


ARONSON, J.